UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

MEMORANDUM ORDER

* * * * * * * * * * * * * * * * * * *

First National Bank (FULDA), Peoples Holding Company, Inc., Commercial Federal Bank, BNC National Bank, Farmers & Merchants State Bank, American Federal Bank, First National Bank of Bovey, First National Bank (Chisholm), First National Bank (Pierre), First National Bank of the North, First State Bank of Red Wing, First National Bank (Moline), Northern State Bank of Virginia, Northwoods Bank of Minnesota, Prairie State Bank, Rosemount National Bank State Bank of LaCrosse, Inc., State Bank of Aurora, Triumph State Bank, Citizens State Bank (Roseau), Community First Financial, Inc., First Federal Bank (Bemidji), First Savings Bank, fsb (Beresford), First State Bank (Sauk Centre), Red River State Bank, State Bank of Delano, and Vermillion State Bank,

Plaintiffs,

vs.

American Lenders Facilities, Inc,

Defendant and Third-, Party Plaintiff,

vs.

Norwest Bank Minnesota, National Association, Inc., a subsidiary of Wells Fargo Company; Dain Rauscher Corp., formerly known

FILED MAY 23 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

as Dain Bosworth, Inc.; and
Agricultural Excess and Surplus
Insurance Co., and DOES 1-100,
inclusive,

Third-Party
Defendants. Civ. No. 00-269 (JRT/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 23rd day of May, 2000.

## I. Introduction

On April 20, 2000, the Court heard argument on the Plaintiffs' Motion to Remand this action to the State District Court of Hennepin County, Minnesota. At the time of the Hearing, the Plaintiffs appeared by Shane Harr Anderson, and Scott S. Payzant, Esqs.; the Defendant and Third-Party Plaintiff American Lenders Facilities, Inc. ("American"), appeared by Thomas B. Heffelfinger, Esq.; the Third-Party Defendant Agricultural Excess and Surplus Insurance Co., appeared by Charles E. Spevacek, Esq.; the Third-Party Defendant Norwest Bank Minnesota, appeared by Charles Frederick Webber, Esq.; and the Third-Party Defendant Dain Rauscher Corp. appeared by James K. Langdon, Esq. For reasons which follow, the Plaintiffs' Motion to Remand is denied.[1]

---

[1]Within this District, and within this Circuit, Motions to Remand a State Court proceeding, whose removal to Federal Court has been effected, are recognized as nondispositive Motions, which are (continued...)

## II. Factual and Procedural Background

This action arises out of losses that were assertedly sustained by the Plaintiffs in connection with the alleged mismanagement of two trusts -- the First Fidelity 1995-1 Grantor Trust ("the 1995-1 Trust"), and the First Fidelity 1995-2 Grantor Trust ("the 1995-2 Trust") -- or, more specifically, two series of securitized automobile loan investment pools. Each individual Plaintiff owns a certificate representing an undivided ownership interest in either the 1995-1 Trust and/or the 1995-2 Trust. Under the terms governing the Trusts, that is, the Class A Certificates that were issued to those with ownership interests, as well as the governing Service Agreement, each individual with an ownership interest in the Trusts is entitled to receive monthly distributions of the unpaid principal balance of the Receivables retained by each Trust, plus interest at a specified pass through rate. The amount of the

---

[1](...continued) within the referral jurisdiction of this Court, as provided by Title 28 U.S.C. §636(b)(1)(A). See Dyrda v. Wal-Mart Stores, Inc., 41 F. Supp.2d 943, 945 (D. Minn. 1999); Regents of the Univ. of Minnesota v. Glaxo Wellcome, Inc., 44 F. Supp.2d 998, 1001 (D. Minn. 1999); Blair v. Source One Mortg. Services Corp., 925 F. Supp. 617, 619 n. 1 (D. Minn. 1996); Banbury v. Omnitrition Intern., Inc., 818 F. Supp. 276, 279 (D. Minn. 1993); White v. State Farm Mutual Automobile Company, 153 F.R.D. 639, 642 (D. Neb. 1993). Accordingly, our ruling is expressed as an Order of the Court.

distributions, to which each Plaintiff is entitled, is based upon the amount of money they invested into the Trusts.

Both of the Trusts were established pursuant to the terms of a Servicing Agreement, with respective Receivables of approximately $6,000,000 and $10,500,000. In addition, both Trusts were covered by insurance policies that insured against the loss of, or damage to, the vehicles that were the subject of the installment sales contracts in the loan pools, as well as loss due to a vehicle owner's default in his or her payment obligations.

By written contract, American agreed to undertake the obligations as the Servicer of the Trusts. This litigation arises out of the Plaintiffs' contention that American failed to properly carry out its responsibilities, and obligations, as Servicer. See, Complaint, at ¶¶ 43-45. According to the Plaintiffs, as a result of American's negligence, they have incurred losses which, collectively, are estimated to exceed $2,000,000, which represents the unpaid distributions to the Trusts. Id. at ¶¶ 44, 46.

The Plaintiffs' Motion to Remand is prompted by the fact that the computation of the damages, that were purportedly sustained by each individual Plaintiff, is dependent upon the amount of funds that Plaintiff invested and, therefore, some of the individual Plaintiffs will not have incurred damages which exceed the $75,000 jurisdictional threshold established by Title 28 U.S.C. §1332,

while others will. See, Plaintiffs' Memorandum in Support of Motion to Remand, at 4, citing Affidavit of Shane H. Anderson. As such, the Plaintiffs request that we remand this action to Hennepin County District Court. In contrast, American and the Third-Party Defendants oppose the Motion, and request that we aggregate the damage amounts claimed by each of the individual Plaintiffs, so that their collective ad damnum can be considered for jurisdictional purposes.

## III. Discussion

A. Standard of Review. In relevant part, Title 28 U.S.C. §1441(a), which governs the removal of State Court matters to Federal Court, provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Following removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Title 28 U.S.C. §1447(c). "In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction."

Peterson v. BASF Corporation, 12 F. Supp.2d 964, 968 (D. Minn. 1998), citing In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Masepohl v. American Tobacco Co., 974 F. Supp. 1245, 1249 (D. Minn. 1997).

"Where, as here, all concede that complete diversity exists between the parties, our analysis necessarily focuses upon the amount in controversy threshold of $75,000." Peterson v. BASF Corporation, supra at 968, citing Blair v. Source One Mortgage Servs. Corp., 925 F. Supp. 617, 622 (D. Minn. 1996). "[W]hen a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." State of Missouri ex. rel. Pemiscot County v. Western Surety Company, 51 F.3d 170, 173 (8th Cir. 1995).

B. Legal Analysis. "Under long established Supreme Court precedent, in a class action setting, each Plaintiff must satisfy the amount in controversy threshold, as no aggregation of claimed damages among the parties-Plaintiff is permissible." Peterson v. BASF Corporation, supra at 969, citing Zahn v. International Paper Co., 414 U.S. 291, 300 (1973); Snyder v. Harris, 394 U.S. 332, 336 (1969). However, an exception to the non-aggregation rule has been

recognized where "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." Peterson v. BASF Corporation, supra at 969, quoting Zahn v. International Paper Co., supra at 294. Here, the Defendants maintain that, because the Plaintiffs share a common, undivided interest in the Trusts, which were assertedly mismanaged by American, their claims should be aggregated, so that they satisfy the jurisdictional monetary threshold established by Title 28 U.S.C. §1332(a). We agree.

As we stated in Peterson v. BASF Corporation, supra at 972:

> The governing rule, for determining whether class members' claims are subject to aggregation, was stated in Troy Bank of Troy, Inc. v. G.A. Whitehead & Co., 222 U.S. 39, 40-41 (1911), as follows:
>
> "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." [citations omitted]
>
> The "paradigm cases," which allow claims to be aggregated, "are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insur-

> ance policy." [citation omitted] In other words, aggregation is permitted, when the adjudication of one claim implicates the rights of all other claimants.

Id.

Given the Record presented, the Plaintiffs' individual claims should properly be aggregated.

In their Complaint, the Plaintiffs expressly allege that all of the certificate holders -- that is, the individuals with ownership interests in the Trusts -- hold certificates representing **undivided ownership interests** in the Trusts. See, Complaint, at ¶ 31 [emphasis added]. As underscored by the Defendants, there is no contention that American improperly serviced only portions of the Trusts which relate to any one or more, but less than all, of the individual Plaintiff's interests. In fact, the Plaintiffs' Complaint reads as follows:

> [American] has failed to properly carry out its responsibilities and obligations as Servicer. As a result, [American] has breached its contract with the Certificate Holders, causing the Certificate Holders, **collectively**, to incur losses estimated to exceed $2,000,000, representing unpaid distributions from the Trusts which they were entitled to receive as Certificate Holders.

Id., at ¶ 33[emphasis added].

Since the Plaintiffs do not assert individual damage claims but, rather, seek recovery as collective group of Certificate Holders, whose damages can only be computed as individual percentages of a

unified damages recovery, aggregation for jurisdictional limits purposes is appropriate. Indeed, the individualized damages owing to any individual Plaintiff -- assuming the Plaintiffs collectively establish liability -- can only be ascertained by multiplying their individualized percentage of ownership against the collective damage figure, if any, that is attributable to the claimed wrong-doing of American. See, Anderson Aff., Exs. A-D (reflecting that each Plaintiff's damage award will depend upon the amount that the Plaintiff invested, as shown on the Plaintiff's individualized Class A Certificates, following the initial damages calculation, and the damages will be allocated to each Plaintiff, based upon that Plaintiff's pro-rata ownership share). If, as American maintains, the Trusts were properly managed, then none of the Plaintiffs can expect a monetary recovery in this case. Accordingly, the Plaintiffs' collective claim presents the "paradigm case," in which individual Plaintiff's claims should aggregated for jurisdictional purposes, as they involve their respective indivisible interests in a common fund, which implicate the joint rights of all the other ownership interests in the 1995-1 Trust, and the 1995-2 Trust.

Our conclusion is supported by the holding in Dixon v. Northwestern Nat. Bank of Minneapolis, 276 F. Supp. 96 (D. Minn. 1967). In Dixon, several plaintiffs joined together to bring an action

against Northwestern National Bank of Minneapolis, in Federal Court, alleging that Northwestern had improperly managed a trust in which the plaintiffs collectively held an interest. Id. at 97. Although the Plaintiffs collectively sought compensatory damages in the amount of $45,800, if the Plaintiffs prevailed on the liability issue, only one, individual Plaintiff would recover an amount in excess of the then $10,000 jurisdictional threshold. Id. at 98. The Court concluded that, where plaintiffs are interested in establishing an identical breach of an agreement with respect to a Trust, the fact that the plaintiffs seek damages, in pro rata shares from the Trust, does not defeat an aggregation of their damage claims for jurisdictional purposes. As a result, the Court found that the Plaintiffs' claims could be aggregated, and specifically held that it was irrelevant whether each individual plaintiff's recovery would be based on their pro rata share. Id. at 102. In this respect, the Court observed:

> It is noted that plaintiffs claim pursuant to a single instrument -- the trust agreement between [plaintiffs' employer] and Northwestern National Bank. The alleged defalcation took place during the regular administration of that trust. Plaintiffs are each interested in establishing the identical breach of trust. There is only one fund involved. The fact that plaintiffs seek pro rata shares thereof flows logically and alone should not defeat aggregation.

Id.

We find Dixon to be apposite, as well as expressing a correct application of the law. Accordingly, the Plaintiffs' claims should be aggregated, since they each have a common interest in establishing an identical breach with respect to the Trusts and, therefore, the proof supporting the claims of each individual Plaintiff will be substantively identical. Id. at 103. If any damages are owing to the Plaintiffs, they will be owing to the collective whole, from which each individual Plaintiff will take a recovery on a pro rata basis according to its own, individual ownership interest in the common res of the Trusts. Stated otherwise, the damages of any individual Plaintiff will not be ascertainable until such time as the damages, if any, owing to the collective group of Plaintiffs can be determined. As such, aggregation is the logical, unavoidable consequence of the very claims that the Plaintiffs have jointly pled. Therefore, the Motion to Remand is denied.[2]

---

[2]Alternatively, American and the Third-Party Defendants urge that the amendments to Title 28 U.S.C. §1367 overrule the Supreme Court's prior holding in Zahn v. International Paper Co., 414 U.S. 291 (1973), and, thereby, empower this Court to exercise supplemental jurisdiction over the claims of plaintiffs whose claims fail to satisfy the amount-in-controversy requirement. Several Courts have agreed with this urging, including the United States Court of Appeals for the Fifth Circuit which, in In Re Abbott Laboratories, 51 F.3d 524 (5th Cir. 1995), held that, "under §1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives." Peterson v. BASF Corp., 12 F. Supp.2d 964, 969-970 (D. Minn. 1998), quoting, In Re (continued...)

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' Motion to Remand [Docket No. 4] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[2](...continued) Abbott Laboratories, supra at 529; see also Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir. 1996).

As both parties recognize, in Peterson, we closely analyzed this same argument, and concluded that Section 1367 does not overrule Zahn, so as to permit the aggregation of separate class member claims. See, Peterson v. BASF Corp., supra at 968-972; see also In re Potash Antitrust Litigation, 866 F. Supp. 406 (D. Minn. 1994). Recently, the United States Supreme Court granted certiorari to review the ruling in In re Abbott Laboratories, Inc., but ultimately affirmed the Judgment of the Fifth Circuit by an equally divided vote, with Justice O'Connor taking no part in the consideration or decision of the case. See, Free v. Abbott Laboratories, Inc., --- U.S. ---, 120 S.Ct. 1578 (2000). While that affirmance is binding upon the parties in Abbott, it provides no precedential guidance in other cases, as an affirmance by an equally divided United States Supreme Court ends the process of direct review and settles no issue of law. See, Neil v. Biggers, 409 U.S. 188, 192 (1972). Rather, the effect of the affirmance is the same as if the appeal was dismissed. Id. Consequently, the Supreme Court's decision in Free is prohibited from "becoming an authority for the determination of other cases, either in [the Supreme Court] or in inferior courts." Hertz v. Woodman, 218 U.S. 205, 213-214 (1910); see also, United States v. Pink, 315 U.S. 203, 216 (1942).

While we continue to accept our disposition of the alternative argument, as we examined it in Peterson, given our determination that the individual Plaintiff's claims should be aggregated, because of other grounds, we have no need to reach the issue here.