**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

FIRST NATIONAL BANK (FULDA), FIRST SAVINGS BANK, FSB (BERESFORD), and BNC NATIONAL BANK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN LENDERS FACILITIES, INC.,

Defendant/Third Party Plaintiff,

v.

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, formerly known as Norwest Bank Minnesota, National Association; DAIN RAUSCHER INC., formerly known as Dain Bosworth, Inc.; and AGRICULTURAL EXCESS AND SURPLUS INSURANCE CO.,

Third-Party Defendants.

Civil No. 00-269 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

Lawrence R. Commers, Shane H. Anderson, Timothy D. Moratzka, MACKALL, CROUNSE & MOORE, PLC., 1400 AT&T Tower, 901 Marquette Avenue South, Minneapolis, MN, 55402, for plaintiffs.

FILED ______

RICHARD D. SLETTEN, CLERK

JUDGMENT ENTD. SEP 2 20__

DEPUTY CLERK ______

Amy J. Longo and Philip R. Kaplan, O'MELVENY & MYERS LLP., 610 Newport Center Drive, 17th Floor, Newport Beach, CA 92660; Caryn S. Glover, Robert D. Maher, and Marlene A. Petersen, BEST & FLANAGAN LLP., 225 Sixth Street South, Minneapolis, MN, 55042; for defendant and third-party plaintiff American Lenders Facilities Inc.

Charles F. Webber and Stephen M. Mertz, FAEGRE & BENSON LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, 55402-3901, for third-party defendant Wells Fargo.

James K. Langdon II and Mitchell Granberg, DORSEY & WHITNEY LLP., 50 South Sixth Street, Suite 1500, Minneapolis, MN, 55402, for third-party defendant Dain Rauscher.

Charles E. Spevacek, Stacy Broman and Douglas A. Johns, MEAGHER & GEER P.L.L.P., 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN, 55402; Frederick S. Fields, COBLENTZ, PATCH, DUFFY & BASS,LLP, 222 Kearny Street, Seventh Floor, San Francisco, CA, 94108, for third-party defendant Agricultural Excess and Surplus Insurance Company.

Plaintiffs, a group of regional and local banks, are investors in three trusts that own pools of sub-prime automobile loans. They bring this action against defendant American Lenders Facilities, Inc. ("ALFI") for breach of its contractual duties to properly service the loans in question. ALFI responded by filing a third-party complaint against Wells Fargo Bank Minnesota, National Association, formerly known as Norwest Bank, Minnesota ("Wells Fargo"), Dain Rauscher ("Dain"), and Agricultural Excess and Surplus Insurance Company ("AESIC") for indemnity and contribution, claiming that any liability it may owe to plaintiffs arises solely from the negligence and breach of duties of the third-party defendants.

This matter is before the Court on the motions for summary judgment by third-party defendants' Wells Fargo, Dain and AESIC.[1] For the reasons that follow, the motions are granted in their entirety.

## BACKGROUND

### A. he Securitization Process

This case involves the "securitization" of sub-prime auto loans, which are secured auto loans made to riskier-than-normal borrowers. The securitization of automobile loans is accomplished by pooling individual loans and selling participation interests in the proceeds generated by the pools. The process begins with loans made to individuals with high risk credit who bought vehicles from car dealers and financed the purchases by agreeing to make installment payments over time. The dealers then sold the individual loan contracts and security interests in the financed vehicles to First Fidelity Acceptance Corporation ("FFAC"), a company engaged in the business of purchasing installment loan contracts and security agreements from various vehicle dealers.

From there, FFAC created groups or "pools" of the individual installment loan contracts and security agreements and sold the "pools" of installment contracts to special purpose corporations that were formed to purchase the pools. In this case, FFAC sold some of the pools to First Fidelity Vehicle Receivables Corporation ("FFVRC") and other pools to First Fidelity Installment Receivables Corporation ("FFIRC").

---

[1] Plaintiffs also moved for class certification, however, that motion is now moot in light of a settlement reached by plaintiffs and ALFI just prior to oral argument. The pending settlement also moots plaintiffs' appeal of the Magistrate Judge's Order of October 4, 2001 [Docket No. 98] and plaintiffs' motion for leave to file the affidavit of Julie A. Staum [Docket No. 100].

## B. The Trusts

FFVRC and FFIRC created trusts and sold each of the pools of loans and other related property to the trusts that they had created. The trusts at issue in this case are the last three of seven trusts formed since 1992. The three trusts are: the First Fidelity 1995-1 Grantor Trust (the "1995-1 Trust"), dated February 1, 1995, the First Fidelity 1995-2 Grantor Trust (the "1995-2 Trust") dated June 1, 1995, and the First Fidelity 1995-3 Grantor Trust (the "1995-3 Trust") dated October 1, 1995. Each of the trusts were created and governed by a Pooling and Servicing Agreement (collectively referred to as the "Servicing Agreements"). Section 2.1 provides for the creation of the relevant trusts. Section 2.2 of each agreement provides that FFVRC (with respect to the 1995-1 and 1995-2 Trusts) and FFIRC (with respect to the 1995-3 trust) sell a specified pool of installment loan contracts, security interests and other related property to the relevant trust.

## C. ALFI as Servicer

Under these agreements, ALFI agreed to undertake numerous duties, including the responsibility to service the loans, collect and apply the payments, provide reports, repossess the cars when buyers default, liquidate defaulted cars, and file insurance claims.[2] One of ALFI's most important responsibilities is to collect on loans when a borrower becomes delinquent. Servicing Agreements § 3.2 ("[ALFI] shall make reasonable efforts to collect all payments called for under the terms and provisions of the

---

[2] The majority of ALFI's duties are set out in Article III of the Servicing Agreements.

Receivables as and when the same shall become due and shall follow such collection procedures as it follows with respect to comparable automotive receivables that it services for itself and others."). Because collecting delinquent loans often requires repossession of the financed vehicle in question, § 3.3 of the Servicing Agreements sets forth the procedures that ALFI must follow in repossessing and liquidating vehicles. Unlike what ALFI claims is the customary practice of sending repossessed vehicles immediately to auction, the Servicing Agreements here required ALFI to follow a procedure called retail remarketing. The program is described in the agreement as follows:

> Prior to any sale of a repossessed Financed Vehicle at auction or to a wholesaler, the Servicer [ALFI] shall cause the repossessed vehicle to be delivered to a designated vehicle dealer for remarketing to retail buyers under the ALPI Insurer's vehicle remarketing program. Promptly after the repossession of a Financed Vehicle, the Servicer shall notify and request instructions from First Fidelity, which shall instruct the Servicer as to which designated vehicle dealer the vehicle should be delivered to for remarketing. In the event First Fidelity does not provide such instructions within ten (10) business days, the Service shall designate a dealer to remarket the repossessed Finance Vehicle in accordance with the ALPI Insurer's remarketing program.

Servicing Agreements § 3.3.

## D. Wells Fargo as Trustee

Wells Fargo was appointed trustee of each of the trusts. Its primary duty as trustee, as outlined in section 2.3 of the Servicing Agreements, is to "accept all of the receivables and other property conveyed by the seller pursuant to section 2.2 and . . . to hold such receivables and other property upon the trusts herein set forth for the benefit of all future Certificateholders without recourse, subject to the terms and provisions of this

Agreement." Wells Fargo's remaining duties are set forth in Article X of the Servicing Agreements. Section 10.1 provides that Wells Fargo, as trustee, "shall undertake to perform only such duties as are specifically set forth in this Agreement." Although the agreement provides that "no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act (other than errors in judgment) or its own bad faith," this provision is limited as follows:

> [T]he duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as shall be specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee . . . .

Servicing Agreements §10.1(i).

**E. AESIC as Risk Default Insurer**

Because the underlying car loans at issue in this case were "sub-prime" loans to risky borrowers, a certain rate of default on the loans is to be expected. The financed vehicles serve as collateral for the loans, but at times the value of the vehicle will not cover the entire outstanding balances of the loan. To gain extra security, FFAC purchased risk default insurance from AESIC. AESIC issued FFAC an insurance policy that covers the installment loan contracts that make up the loan pools. In the simplest terms, this policy requires AESIC to pay a certain amount of money in the event that a vehicle owner defaults on his or her loan and the collateral securing the loan is insufficient to cover the loan balance.

According to the Servicing Agreements, it was ALFI's responsibility to file insurance claims as they arose and ensure that the prerequisites to collecting on an

insurance claim are met. Servicing Agreements §§ 3.3; 3.15. A review of the default policy and attachments reveal that remarketing was necessary for recovering under the policy. *See* Attachment C. Neither ALFI nor plaintiffs are parties to or insureds under the policy.

**F. Dain as Marketer and Underwriter**

Dain marketed the participation interests in the trusts as investments. Plaintiffs, who bought these interests in the trusts, received certificates evidencing their interest in the particular trust. Plaintiffs' decision to invest in these trusts were based on very detailed disclosures contained in lengthy private placement memoranda ("PPMs"), which Dain prepared.

ALFI alleges that in the three areas that were central to the trusts' performance—underwriting, defaults and remarketing—the representations in the PPMs were contrary to information that was and should have been known to Dain at the time of plaintiffs' investments. According to ALFI, the information contained in the PPMs and relied upon by plaintiffs was seriously misleading and inaccurate, and that Dain either knew or should have known accurate information at that time. ALFI further alleges that the failure of the PPMs to describe the risks associated with the mounting inventory in the remarketing program was a material omission.

**G. This litigation**

Plaintiffs, certificateholders in the three trusts in question, instituted this diversity action in February 2000. Their complaint asserted a straightforward breach of contract claim against ALFI. They allege that the loans have not performed as well as expected

because ALFI did not properly perform its servicing obligations, including, among other things, the failure to repossess vehicles within a reasonable time of default; the failure to sell repossessed vehicles within a reasonable time; the failure to maximize the selling price received for repossessed vehicles; and the failure to maximize the amounts recoverable from insurance. Plaintiffs' sole allegation against ALFI is for breach of the Servicing Agreements, a breach which plaintiffs allege caused them to incur losses estimated at exceeding $3,000,000. This amount represents the unpaid distributions from the trusts plaintiffs were expected to receive had ALFI properly fulfilled its contractual obligations. ALFI responded by filing a third-party complaint against Wells Fargo, the trustee, AESIC, the risk default insurer, and Dain, the underwriter, seeking indemnity and contribution.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Third-Party Defendants' Motions for Summary Judgment

As stated above, ALFI has brought contribution and indemnity claims against the third-party defendants, alleging that any liability ALFI may owe to plaintiffs arises solely from the negligence and/or breach of duties of Wells Fargo, Dain and AESIC. All three third-party defendants now move to dismiss these claims against them on the basis that ALFI's claims against them are unsupportable in both law and fact.

"Indemnity and contribution are both remedies based on equitable principles to secure restitution to one who has paid more than his just share of a liability." *White v. Johnson*, 137 N.W.2d 674, 677 (Minn. 1965). "Although similar in nature and origin and having a common basis in equitable principles, the two remedies differ in the kind and

measure of relief provided. Contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely." *Id.* at 847. In Minnesota, a party suing for contribution must satisfy two threshold requirements: "the parties must share a common liability or burden and the [party suing for contribution] must have discharged more than his fair share of the common liability or burden." *In re Westerhoff*, 688 F.2d 62, 63 (8th Cir. 1982).[3] The first of these requirements—common liability—is crucial. As Minnesota courts have repeatedly emphasized, "[t]he very essence of the action of contribution is 'common liability.'" *American Auto Ins. Co. v. Molling*, 57 N.W.2d 847, 850 (Minn. 1953); *Horton v. Orbeth, Inc.*, 342 N.W.2d 112, 114 (Minn. 1984). However, the obligation to contribute does not arise from "the mere fact that the parties are joint tortfeasors." *Molling*, 57 N.W.2d at 851. "'[I]t is joint *liability,* rather than joint or concurring *negligence,* which determines the right of contribution.'" *Horton,* 342 N.W.2d at 114 (quoting *Spitzack v. Schumacher,* 241 N.W.2d 641, 645 n.2 (1976)) (emphasis in original).

Indemnity, on the other hand, "does not require common liability, but arises out of a contractual relationship, either express or implied by law, which requires one party to reimburse the other entirely." *Hermeling v. Minnesota Fire & Casualty Co.*, 548 N.W.2d. 270, 274 n.1 (Minn. 1996), *rev'd on other grounds*, *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 404-06 (Minn. 2000); *Union Pacific R. Co. v. Reilly Indus. Inc.*, 215 F.3d 830, 841 (8th Cir. 2000) (under Minnesota law, "[a] party seeking indemnity must

---

[3] There is no dispute that Minnesota law applies in this action. Servicing Agreements § 12.4 (stating that "this agreement shall be construed in accordance with the laws of the state of Minnesota and the obligations, rights, and remedies of the parties under this agreement shall be determined in accordance with such laws.").

show an express contractual relationship or implied legal duty that requires one party to reimburse the other entirely"). Indemnity thus allows "one party held liable to another to shift the entire burden of liability to a third party also liable for the same harm." *United States v. J & D Enters. of Duluth,* 955 F. Supp. 1153, 1157 (D. Minn. 1997). In *Hendrickson v. Minnesota Power & Light Co.*, 104 N.W.2d 843, 847 (Minn. 1960), the seminal case in Minnesota on indemnification, the Minnesota Supreme Court "found the contract theory [justifying indemnity] to be too narrow in scope and adopted the more modern view that 'principles of equity furnish a more satisfactory basis for indemnity.'" *Sorenson v. Safety Falte, Inc.*, 216 N.W.2d 859, 862 (Minn. 1974) (quoting *Hendrickson,* 104 N.W.2d at 847). However, the court cautioned that "the situations in which [indemnity] is allowed are exceptional and limited." *Hendrickson,* 104 N.W.2d at 848. The court then proceeded to list the situations in which a joint tortfeasor may generally recover in indemnity:

> 1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged;
>
> 2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged;
>
> 3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged;
>
> * * *
>
> 5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

*Hendrickson*, 104 N.W.2d at 848.[4]

**A. Claims Against Wells Fargo**

In its second amended third-party complaint, ALFI claims that Wells Fargo is liable in contribution and/or indemnity for its post-contract conduct, namely: its withholding from plaintiffs' loss recognition reports information that would have provided early identification of mounting losses from remarketing; its insistence that ALFI continue with the mandatory remarketing program in the summer of 1996 when ALFI was proposing to take the inventory to wholesale auction; and its insistence on continuing the remarketing program in November 1996 after it was clear that remarketing was not successful.

As these allegations and the arguments contained in ALFI's memoranda in connection with these motions make clear, ALFI's central allegation against Wells Fargo, and all the third-party defendants, concerns its actions in connection with the retail remarketing program. According to ALFI, the common practice in the industry in the event a borrower defaults on a loan is for the servicer to repossess the vehicle, take it immediately to wholesale auction, sell the car, get the proceeds and apply the proceeds to the loan balance. The Servicing Agreements in this case, however, required ALFI to do something called retail remarketing. Under this program, instead of taking the vehicle immediately to auction after repossession, ALFI first had to try and sell the vehicle to a buyer who would be willing to assume the underlying loan. If a sale was not made within

[4] In *Hendrickson*, the Minnesota Supreme Court outlined five situations in which indemnity is appropriate. However, the fourth situation was overruled in *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 367 (Minn. 1977).

a prescribed period of time, then ALFI could take the car to auction. According to ALFI, retail remarketing did not work well and as a result, caused delays and extra costs, and inevitably, losses to the investments. However, as the discussion below will demonstrate, the lack of success in a program contractually agreed to by the parties, including ALFI, does not necessarily create a legally compensable claim.

**1. Indemnity Claim**

ALFI concedes, as it must, that the Servicing Agreements do not give ALFI an express contractual right to indemnification from Wells Fargo. Indeed, § 8.2 of the Servicing Agreements governing indemnification expressly provides that while ALFI has a duty to indemnify Wells Fargo, Wells Fargo does not have a corresponding duty to indemnify ALFI. Thus, in order for ALFI to recover from Wells Fargo, it must rely on theories of "equitable indemnification." In this case, ALFI contends that Wells Fargo is liable in indemnity under either the second prong (liability incurred at the direction of another) or third prong (liability because of a breach of duty owed by another party) of the *Hendrickson* analysis. Specifically, ALFI contends that it continued with the remarketing program only at the direction of Wells Fargo, who insisted on continuing with that program despite its lack of success.

ALFI's indemnification claim fails on several grounds. First, the plain language of the agreement precludes claims against Wells Fargo based on implied theories of liability. Section 10.1 of the Servicing Agreements provides that "the duties and obligations of [Wells Fargo] shall be determined solely by the express provisions of this Agreement, [Wells Fargo] shall not be liable except for the performance of such duties

and obligations as shall be specifically set forth in this Agreement, and **no implied covenants or obligations shall be read into this Agreement against [Wells Fargo].**" (Emphasis added.) Moreover, the parties expressly considered and addressed the issue of indemnification in the Servicing Agreements and did not create a duty of indemnification in favor of ALFI. As mentioned above, Wells Fargo and ALFI expressly agreed in § 8.2 that ALFI has a duty to indemnify Wells Fargo for a breach of ALFI's duties under the contract, but the converse is not true.[5] The inclusion of an indemnification provision in the Agreements is significant because it demonstrates that the parties were focused on this topic and knew how to provide for indemnification rights. *Brookfield Trade Ctr. Inc. v. County of Ramsey,* 584 N.W.2d 390, 395 (Minn. 1998) (parties failure to include certain provision in contract implied intent not to be bound by such a provision). Furthermore, Minnesota law is clear that the existence of an express contract precludes recovery under implied contract or other quasi-contractual theories on the same subject matter. *Reese Design, Inc. v. I-94 Highway 61 Eastview Ctr. Partnership*, 428 N.W.2d 441, 446 (Minn. Ct. App. 1988); *Schimmelpfennig v. Gaedke,* 27 N.W.2d 416, 420-21 (Minn. 1947). That is precisely the situation here. Wells Fargo, ALFI and FFAC

[5] Section 8.2 of the Agreement provides, in its entirety:

> The Servicer [ALFI] shall indemnify, defend, and hold harmless the Trustee [Wells Fargo], its officers, directors, employees and agents, the Seller [FAFC], the Trust and the Certificateholders from and against any and all costs, expenses, losses, claims, damages, and liabilities to the extent that such cost, expense, loss, claim, damage or liability arose out of, or was imposed upon the Trustee, the Seller, the Trust or the Certificateholders as a result of the gross negligence, willful malfeasance, or bad faith of the Servicer in the performance of its duties under this Agreement or by reasons of the Servicer's breach of its obligations and duties under this Agreement.

contracted to delineate their respective rights and obligations under the Servicing Agreements. Wells Fargo is entitled to have the provisions of these agreements enforced.

Finally, ALFI's claim fails on a more basic level. As mentioned above, ALFI's primary contention against Wells Fargo is that it required or directed ALFI to continue with remarketing. However, even assuming this fact as true for purposes of this motion, the fatal flaw in ALFI's argument is that the Servicing Agreements expressly required ALFI to do remarketing. Section 3.3 of the Servicing Agreement expressly provides that "prior to any sale of a repossessed Financed Vehicle at auction or to a wholesaler, ALFI **shall cause** the repossessed vehicle to be delivered to a designated vehicle dealer for remarketing to retail buyers under the ALPI Insurer's vehicle remarketing program." (Emphasis added.) ALFI's indemnification claim thus fails for all the above-stated reasons.

### 2. Contribution Claim

ALFI's contribution claim against Wells Fargo fares no better. Again, a claim for contribution hinges on the existence of common liability to plaintiffs. In this case, ALFI claims that Wells Fargo was negligent to plaintiffs in their reporting duties and breached its fiduciary duties in not amending the Agreements to abolish the remarketing program and allow ALFI to send repossessed vehicles to auction. Taking the latter argument first, ALFI's breach of fiduciary duty claim fails because Wells Fargo was not empowered to unilaterally amend provisions in the Servicing Agreements.[6] Rather, as the amendment

[6] In addition, Wells Fargo's duties as Trustee were limited by the express terms of the Agreements.

section of contracts makes clear, any amendment required the approval of Wells Fargo, ALFI, and FFAC. Servicing Agreements at § 12.1. In this case, even if Wells Fargo and ALFI may have desired the amendment, ALFI has not presented evidence that FFAC would have agreed to the amendment. Indeed, as ALFI itself concedes at numerous junctures, FFAC championed remarketing. Accordingly, it is purely speculative whether an amendment would have been successful. *Godfrey v. Pulitzer Publishing Co.*, 276 F.3d 405, 412 (8th Cir. 2002) ("In order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy.'") (quoting *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994)); *Habib v. NationsBank*, 279 F.3d 563, 567 (8th Cir. 2001). In addition, removal of remarketing from the Service Agreements would have contradicted the terms of the AESIC insurance policy, which expressly required remarketing.

Finally, plaintiff has not presented sufficient evidence to withstand summary judgment regarding its allegation that Wells Fargo breached its duties to plaintiffs by not properly reporting losses to plaintiffs. Again, the Servicing Agreements contained specific reporting requirements which dictated how ALFI was to report to Wells Fargo and, in turn, how Wells Fargo was to report to plaintiffs. Servicing Agreements § 3.9; § 10.2. Wells Fargo's only error, if any, was that it required ALFI to comply with these reporting requirements under the Agreements. ALFI has not pointed to any caselaw

which would hold Wells Fargo liable for requiring ALFI to comply with its contractual obligations.[7]

### B. Claims Against Dain Rauscher

ALFI's claims for contribution and indemnity against Dain rest upon two occurrences. First, ALFI contends that Dain was negligent in its duties as a private placement agent in preparing the private placement memoranda ("PPMs") upon which plaintiffs relied in deciding whether to invest in the trusts (pre-sale conduct). According to ALFI, Dain negligently performed its duties as underwriter by intentionally or negligently making misleading statements and omissions in the PPMs. Second, ALFI contends that Dain continued to incur liability after selling the certificates to plaintiffs by negligently managing the trusts by directing ALFI to continue with the failing remarketing program and not allowing ALFI to recognize losses resulting therefrom (post-sale conduct).

#### 1. Indemnification Claim

As an initial matter, the Court finds no basis upon which ALFI can establish a contract-based indemnity claim against Dain. Dain is not a party to the Servicing Agreements on which ALFI is being sued by plaintiffs. Though the Servicing Agreements do contain provisions dealing with indemnification, none of those provisions address Dain. Accordingly, as with ALFI's claim against Wells Fargo, ALFI must rely

---

[7] In addition, as counsel for Wells Fargo explained at oral argument, Wells Fargo attached the alternative reports ALFI submitted to Wells Fargo to the disclosures it sent to plaintiffs, even though Wells Fargo was not obligated to do so under the Servicing Agreements.

on equitable theories of indemnification. ALFI relies on two such theories. Specifically, ALFI argues that: 1) Dain's culpability exceeds that of ALFI, if any, and therefore ALFI is entitled to indemnification as the lesser wrongdoer; and 2) ALFI's liability, if any, was incurred at the direction of, in the interest of, and in reliance on Dain. ALFI's indemnification claim cannot survive summary judgment under either theory.

First, ALFI's reliance on the primary/secondary theory as a basis for indemnification is no longer good law. *Tolbert v. Gerber Indus. Inc.*, 255 N.W.2d 362 (Minn. 1977) (expressly overruling the secondary liability theory articulated in *Hendrickson*). ALFI's second theory for indemnification also fails, but on a factual rather than a legal, basis. Specifically, ALFI claims that Dain is liable because it "directed" ALFI to continue to adhere to the failing remarketing program and also forbade ALFI from recognizing losses based on ALFI's suggested objective criteria. While ALFI's claims may have some superficial appeal, ALFI continues to ignore the undisputed material fact that it had an express contractual duty to perform the mandatory remarketing program in accordance with the dictates of the Servicing Agreements. Servicing Agreement § 3.3. Furthermore, a review of the relevant documents reveal that, while Dain may have concurred in the decisions to continue remarketing and make suggestions on that topic, Dain's comments fall short of "directing" ALFI's actions. ALFI's claim for indemnification against Dain thus fails.

### 2. Contribution Claim

ALFI's contribution claim against Dain fails for the same reasons that its indemnification claim fails above. With respect to ALFI's specific contention that Dain

is liable for its conduct during the 1995 underwriting period, this claim fails for the additional reason that ALFI and Dain did not share a common liability at the time the offense occurred. Under Minnesota law, contribution "applies only when the parties are under a common burden with respect to the same transaction." *Merrimac Mining Co v. Gross*, 12 N.W.2d 506, 509 (1943). Stated another way, "a common liability must exist, if at all, at the time" the offense occurs." *Vesely, Otto, Miller & Keefe v. Blake*, 311 N.W.2d 3, 4 (Minn. 1981); *Ascheman v. Village of Hancock*, 254 N.W.2d 382, 384 (Minn. 1977)

In the present case, ALFI contends that Dain was negligent in its underwriting duties that it conducted in 1995. However, plaintiffs' claim against AFLI arises from ALFI's later failure to properly perform its contractual duties under the Servicing Agreements. The two torts thus occurred at two entirely separate periods of time. *Vesely*, 311 N.W.2d at 5 (contribution claim fails as a matter of law because "appellants and Dr. Blake committed separate and distinct torts, and committed them at different times; they were not jointly liable for either tort at any point in time").

### C. Claims Against AESIC

ALFI's claims for indemnity or contribution against AESIC are even more attenuated than those asserted against Wells Fargo and Dain. AESIC is an insurance company that issued an automobile loan insurance policy in connection with the securitization of automobile loans contained in some of the trusts at issue in the case. The entity with whom AESIC contracted, FFAC, is not a party to this suit. Neither ALFI nor plaintiffs are named insureds under the express terms of the policy.

Nonetheless, ALFI alleges in its second amended third-party complaint that "AESIC participated in the design of the special endorsement to the risk of default insurance that required vehicles repossessed after defaults to be reconditioned and remarketed and that AESIC assumed a duty with respect to the purchasers of certificates in the Trusts to design a risk default program with reasonable care and to implement the program in a reasonable manner." Amended Third-Party Complaint at ¶ 23. In its memorandum, ALFI expands on these factual allegations, claiming that for several years prior to the securitization of the 1995 Trusts at issue here, AESIC was well aware of numerous deficiencies in FFAC's underwriting, remarketing and default prediction practices. According to the evidence submitted by ALFI, AESIC knew that: 1) FFAC's underwriting practices were suspect, employing inadequate underwriting criteria and then failed to follow them; 2) the remarketing program was defective, resulting in long delays and an accumulation of depreciating repossessed vehicle inventory; and 3) FFAC's default prediction model was unreliable. Yet, despite knowledge of this information, ALFI alleges that AESIC reviewed and commented upon the representations concerning the trusts in the PPMs but failed to correct the inadequate and misleading disclosures contained therein and permitted the trusts to be marketed based upon deficient PPMs, including misleading representations regarding losses that would be covered by insurance. On these facts, ALFI claims it has submitted a triable issue of fact that AESIC breached its duty to plaintiffs of good faith and fair dealing.

AESIC argues that, even assuming all the above allegations are true, ALFI's claims fail as a matter of law because ALFI, a complete stranger to the risk default insurance policy, lacks standing to sue AESIC. AESIC further alleges that ALFI's entire

argument rests on the flawed premise that plaintiffs, the certificateholders, were AESIC's insureds.

Without resolving whether ALFI, a non-insured third-party, has standing to bring suit against AESIC, the Court agrees with AESIC that ALFI has failed to show that AESIC owed any legal duty to plaintiffs under the policy. Simply put, plaintiffs were not insured under the risk default insurance policy. The policy is between AESIC and FFAC, a party not joined in this litigation. No policy provision grants additional insured status to plaintiffs.

ALFI's only argument in response is to suggest that plaintiffs were AESIC's insureds because Wells Fargo was included as an additional insured. Case law fails to support this contention, however. *Peerless Ins. Co. v. Dimas,* 539 F. Supp. 46, 48 (N.D. Ill. 1981). In *Peerless,* an insurance company attempted to collect premiums from two beneficiaries of a trust insured under the policy after the named insured went bankrupt. *Id.* at 46. The insurance company's theory, like ALFI's here, was that because the trustee of the trust was made an additional insured under the policy, its beneficiaries also became personally liable for the premiums. *Id.* at 46-47. The court rejected that argument as "entirely groundless." *Id.* at 47. Not only did the policy language distinguish between a "named insured" and other insureds added by endorsement, but in addition, the beneficiaries, Dimas and Samatas, were not made "persons insured" under the policy. *Id.* at 48.

The same result is compelled here. There is no evidence under the language of the policy to support ALFI's contention that plaintiffs became insureds through Wells

Fargo.[8] Accordingly, the Court finds no basis for ALFI's allegation that AESIC acquired some legal duty to warn or disclose to plaintiffs deficiencies in the PPMs.[9]

Thus, for all the foregoing reasons, the Court concludes that ALFI's claims of contribution and indemnification against Wells Fargo, Dain, and AESIC cannot withstand summary judgment. Accordingly, the motions are granted.

## ORDER

Based upon all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' appeal from Magistrate Judge's order [Docket No. 98] is **DENIED as moot.**

2. Plaintiffs leave to file affidavit of Julie A. Staum [Docket No. 100] is **DENIED as moot.**

3. Third-Party Defendant Wells Fargo motion for summary judgment [Docket No. 115] is **GRANTED.**

---

[8] Indeed, the Endorsement adding Wells Fargo (at the time Norwest Bank) as an additional insured expressly includes the following disclaimer:

> The policy is extended to include the above Additional Insured, but only for their interest as such. **All rights and conditions of the policy remain with the Insured named in Item A (FFAC) of the policy declaration. Such inclusion of an Additional Insured shall not increase the Company's liability under this policy.**

Endorsement No. 11 (emphasis added).

[9] The additional caselaw ALFI submitted to the Court just prior to oral argument is not helpful on this point. In *Heavy Funding Corp. v. Allcity Ins. Co.*, 235 A.D.2d 225, 225 (App. Div. N.Y. 1996), the plaintiff mortgage holder was expressly named in the policy. The other two cases relied on by ALFI are also distinguishable based on the policy language in those policies and the policy at issue here.

4. Third-Party Defendant Agricultural Excess's motion for summary judgment [Docket No. 121] is **GRANTED**.

5. Third-Party Defendant Dain Rauscher's motion for summary judgment [Docket No. 133] is **GRANTED**.

DATED: September 23, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEALNO.CIV
Rev. August 11, 1995